UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| RA'JOUR B., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:21-cv-868-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM |
| | § | DECISION AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Ra'Jour B. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 12).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 9, 10. Plaintiff also filed a reply brief. *See* ECF No. 11. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 9) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 10) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed an application for SSI on April 9, 2019, alleging disability beginning November 20, 2017 (the disability onset date), due to Crohn's disease. Transcript ("Tr.") 15, 201-13, 171. Plaintiff's claim was denied initially on August 8, 2019, and upon reconsideration on November 6, 2019, after which he requested an administrative hearing. Tr. 15.

On August 21, 2020, Administrative Law Judge Paul Georger ("the ALJ") conducted a telephonic hearing,[1] at which Plaintiff appeared and testified and was represented by Zachary Zabawa, an attorney. Tr. 15, 38. Joseph Atkinson, an impartial vocational expert, also appeared and testified. *Id*.

The ALJ issued an unfavorable decision on November 25, 2020, finding Plaintiff not disabled. Tr. 15-27. On June 3, 2021, the Appeals Council denied Plaintiff's request for further review, making the ALJ's November 25, 2020 decision the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g). Tr. 1.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 15.

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168

F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## <u>ADMINISTRATIVE LAW JUDGE'S FINDINGS</u>

The ALJ analyzed Plaintiff's claim for benefits under the process described above and

made the following findings in his November 25, 2020 decision:

1. The claimant has not engaged in substantial gainful activity since April 9, 2019, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: Crohn's disease, intellectual disorder, meniscal tear of the left knee, and arthritis/arthralgia of both knees (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform light work as defined in 416.967(b)[2], except the claimant: can occasionally use ramps, stairs, ladders, ropes and scaffolds; can occasionally balance, stoop, kneel, crouch and crawl; is able to perform simple, routine and repetitive tasks but not at a production rate pace (*e.g.*, assembly line work); and is able to make simple work-related decisions.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on November 20, 1999, and was 19 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

10. The claimant has not been under a disability, as defined in the Social Security Act, since April 9, 2019, the date the application was filed (20 CFR 416.920(g)).

Tr. 15-27.

Accordingly, the ALJ determined that, based on the application for supplemental security income protectively filed on April 9, 2019, the claimant is not disabled under section 1614(a)(3)(C) of the Social Security Act. Tr. 27.

## ANALYSIS

Plaintiff asserts a single point of error. Plaintiff argues that remand is required because the ALJ did not reconcile the RFC finding with the treating source opinion of Brian Edelstein, M.D. ("Dr. Edelstein"). *See* ECF No. 9-1 at 8-14. Specifically, Plaintiff complains that the ALJ found Dr. Edelstein's opinion partially persuasive but failed to include the doctor's assessed limitation for increased bathroom breaks in the RFC and failed to explain why the RFC did not include additional off-task time for bathroom breaks. *See id.*

The Commissioner argues in response that the RFC was supported substantial evidence and included all necessary limitations. *See* ECF No. 10-1 at 9-22. According to the Commissioner, a limitation in the RFC for additional bathroom breaks was not necessary, because Dr. Edelstein opined only that Plaintiff would need to take one to two 15-minute bathroom breaks per shift, and such breaks would normally be accommodated in an average workday, which generally allows for two breaks in a day in addition to lunch. *See id.* at 19-22 (citing the SSA Program Operations Manual System ("POMS") DI 25020.010B(2)(a)).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The

Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds there is substantial evidence in the record to support the ALJ's finding that Plaintiff retained the RFC to perform work at the light exertional level with additional restrictions. The treatment notes and medical opinions indicate that Plaintiff consistently presented with minimal symptoms and positive clinical findings, and his Crohn's disease was well controlled with medication. Furthermore, the ALJ properly reconciled the evidence of record, including Dr. Edelstein's opinion, and the RFC reasonably accommodates Plaintiff's need for one to two 15-minute bathroom breaks during an eight-hour workday. Accordingly, the Court finds no error.

The record establishes that Plaintiff was diagnosed with Crohn's disease in December 2013. Tr. 251. On February 13, 2017, Reham Abdou, M.D. ("Dr. Abdou"), at UBMD Physicians Group, evaluated Plaintiff for Crohn's disease. Tr. 251-54, 936-39. Plaintiff had been receiving Remicade infusions for over a year. Tr. 251. He also had a history of perianal abscess drainage in 2014. Tr. 251. Plaintiff was noted to have gained weight but was not considered overweight because the weight gain appeared to be more muscle than fat; he stated he hoped to gain more weight in order to play football. Tr. 936. On examination, Plaintiff appeared well developed and well nourished; his abdomen was normal, with no pain to palpation and normal bowel sounds. Tr. 937-38. In addition to Crohn's disease and a history of symptoms consistent with that condition, Dr. Abdou assessed a history of perirectal abscess, acid reflux disease, and elevated serum creatinine. Tr. 938.

On January 4, 2019, Plaintiff had a routine primary care follow-up visit with Kerry Thek, M.D. ("Dr. Thek"), at UBMD Physicians Group. Tr. 22, 242-45, 374-77, 932-35. Plaintiff's last

Remicade infusion was in November 2018, and he had not been seen by the GI Clinic since February 2017. Tr. 242. He reported no abdominal pain or cramping, no diarrhea, no rectal bleeding, no perianal fissures, and no weight loss. *Id*. The findings on examination were benign, including normal gait, station and muscle strength/tone, and a normal abdomen with normal bowel sounds, and he was assessed only with Crohn's disease of the colon. Tr. 244. Plaintiff was attending college and playing football. Tr. 242, 245.

On June 25, 2019, Plaintiff was seen by Nikita Dave, M.D. ("Dr. Dave"), for a consultative internal medicine examination. Tr. 368-70. Plaintiff's chief complaints consisted of Crohn's disease and intermittent arthralgias of the knees; Dr. Dave also noted a history of learning disability. Tr. 368. Plaintiff stated he had been diagnosed with Crohn's disease at the age of thirteen. *Id*. He denied any recent flare-ups, and reported his gastrointestinal symptoms were stable if he avoided fried, spicy and sour foods. *Id*. Plaintiff reported being generally asymptomatic at baseline, although he would have diarrhea if he ingested the wrong foods. *Id*. Plaintiff also reported experiencing exhaustion as a side effect of the Remicade infusions he receives every six weeks. *Id*. His reported activities included cooking, cleaning and shopping as needed, as well as showering, bathing and dressing as needed, and he reported enjoying television, friends, playing sports, church, and reading to little brother. *Id*.

On examination, Plaintiff's gait was normal; he could walk on his heels and toes without difficulty; his squat was full; and his stance was three-fourths down. Tr. 369. He did not require any assistance and was able to rise from a chair without difficulty. *Id*. Abdominal findings were benign, including normal bowel sounds and no tenderness. *Id*. Plaintiff had a full range of motion in his joints, including his knees, with all joints stable and non-tender; and 5/5 strength in his upper and lower extremities, with no evident muscle atrophy or sensory loss. *Id*. Dr. Dave assessed

Crohn's disease, currently stable with Remicade and Pentasa, arthralgias in the knees, and learning disorder. Tr. 370. He opined that Plaintiff may have mild limitations for heavy lifting, carrying, pushing, and pulling due to Crohn's disease. *Id*.

On May 18, 2020, Plaintiff had a telehealth visit with Dr. Edelstein. Tr. 922-24. He again denied diarrhea, abdominal pain, or blood in his stool. Tr. 922. However, he did report a six-month history of discomfort in his knees with possible swelling, that was worse when it rains. *Id*. Plaintiff stated that when his knees and ankles hurt, this can "keep him up for a minute at night." *Id*.  On examination, Plaintiff was able to jump up and down with some complaints of stiffness. Tr. 923. Dr. Edelstein assessed arthralgia/arthritis related to Plaintiff's irritable bowel disease and suggested that Plaintiff likely had active disease in his colon based on his knee pain and increased CRP (C-reactive protein) level. *Id*. Dr. Edelstein ordered several follow-up tests, including blood work and an updated colonoscopy, and a rheumatology consultation. *Id*.

On May 21, 2020, Plaintiff saw Rabheh Abdul Aziz, M.D. ("Dr. Aziz"), for a rheumatology evaluation. Tr. 528-31. Plaintiff's irritable bowel syndrome was reported to be under "good control" at that time, and he denied abdominal pain, nausea, vomiting, diarrhea, constipation or blood in his stool. Tr. 528. On examination, Plaintiff had pain with flexion and extension of his left knee with mild swelling but without limitation of range of motion. Tr. 530. Plaintiff was also noted to have "significantly flat feet bilaterally.' *Id*. Dr. Aziz assessed swelling in the left knee joint, pain in both knees, chronic pain in both ankles, and flat feet. *Id*. He prescribed Celebrex, and due to the COVID-19 Pandemic, recommended home exercises in lieu of in-person physical therapy. *Id*.

On May 22, 2020, Plaintiff presented to the emergency department ("ED") with left knee pain after he slipped getting out of the shower and felt a "pop" in his knee. Tr. 804-08. There was

no obvious swelling or deformity in the knee on examination, but he was tender to palpation over the entire knee, and the range of motion was restricted by pain. Tr. 807. X-rays of the knee were unremarkable; Plaintiff's left knee was placed in an immobilizer; and he was advised to follow-up for an outpatient orthopedic evaluation. Tr. 807-08.

Plaintiff underwent a general physical examination on June 26, 2020, in order to be cleared for a colonoscopy scheduled for July 7, 2020. Tr. 801-03. He reported feeling well and denied gastrointestinal symptoms. Tr. 801. Findings on examination were benign, including an abdomen that was non-distended, non-tender, and soft. Tr. 802. Plaintiff was assessed with Crohn's disease; found to be "in good health;" and cleared for his colonoscopy. *Id*.

On July 28, 2020, Plaintiff returned to Dr. Edelstein for a follow-up telehealth visit. Tr. 919-21. Dr. Edelstein noted that a recent colonoscopy and EGD (esophagogastroduodenoscopy, also known as an upper endoscopy) were normal, as were biopsies. Tr. 919. Plaintiff reported he was not having much abdominal pain, occurring just on a rare occasion, and rarely saw flecks of blood in his stool. *Id*. Plaintiff's left knee remained under evaluation by Dr. Aziz, and he was scheduled to have an MRI. *Id*. Findings on examination were benign, including the ability to walk normally. Tr. 920. Dr. Edelstein concluded that Plaintiff's Crohn's disease was in "deep remission." *Id*.

On August 24, 2020, Plaintiff underwent an MRI of his left knee ordered by Dr. Aziz. Tr. 1002. The MRI examination was motion limited but identified a peripheral oblique tear of the posterior horn of the medial meniscus, trace effusion, along with a nonspecific mild ill-defined enhancing edema in the Hoffa's fat pad. *Id*. There was no evidence of active arthritis. *Id*.

As noted above, Plaintiff challenges the ALJ's RFC finding. A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence

in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*,

508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Here, Plaintiff filed his claim on April 9, 2019, and therefore, the 2017 regulations are applicable to his claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings.  The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or

give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical finding(s) using the following five factors: (1) Supportability; (2) Consistency; (3) Relationship with the claimant (which includes: (i) Length of the treatment relationship; (ii) Frequency of examinations; (iii) Purpose of the treatment relationship; (iv) Extent of the treatment relationship; and (v) Examining relationship); (4) Specialization; and (5) Other factors. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and

statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC, and substantial evidence supports the ALJ's RFC finding. Tr. 20-26. *See* 20 C.F.R. §§ 404.1527, 416.927. First, the ALJ acknowledged Plaintiff's August 21, 2020 hearing testimony that he had severe limitations from Crohn's disease and knee problems, including his testimony that he experienced abdominal

pain; needed frequent bathroom breaks; experienced bloody stools with additional symptoms; and had severe knee pain that sometimes required him to receive assistance dressing himself. Tr. 20-21, 45-53. However, on review of the treatment notes and opinion evidence, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms, especially regarding the nature, frequency and severity of his Crohn's disease symptoms, were not entirely consistent with the medical evidence and other evidence in the record and determined that the record as a whole evidenced far fewer limitations. Tr. 21, 24.

In making this determination, the ALJ comprehensively reviewed the record, including the treatment notes and the medical opinions, and noted that Plaintiff consistently presented with minimal positive clinical findings and reported symptoms. Tr. 24. For instance, the ALJ considered the January 2019 findings of Dr. Thek indicating that, although Plaintiff had last received a Remicade infusion for his Crohn's disease in November 2018, he "ha[d] not been to routine clinic visits since February 2017." Tr. 22, 242, It was also noted that Plaintiff was attending college and playing football; and he denied abdominal pain, abdominal cramping, diarrhea, rectal bleeding, perianal fissures, weight loss, and vomiting. Tr. 22, 242, 245. The findings on examination were benign, including normal gait, station and muscle strength/tone, and a normal abdomen with normal bowel sounds, and Plaintiff was assessed only with Crohn's disease of the colon. Tr. 22, 244.

The ALJ also considered Dr. Dave's June 2019 consultative examination findings. Tr. 22, 369-70. The opinions of consultative examiners, such as Dr. Dave, can provide substantial evidence for and RFC. *See Grega v. Saul*, 816 F. App'x 580, 582-83 (2d Cir. 2020) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (The opinion of a consultative examiner may constitute substantial evidence in support of an ALJ's decision)). As the ALJ noted, Dr. Dave

opined that Plaintiff may have mild limitations for heavy lifting, carrying, pushing and pulling due to Crohn's disease. Tr. 22, 370. However, the ALJ found Dr. Dave's opinion only "partially persuasive" because the record reflected physical impairments that were more than mild. Tr. 24. Thus, the ALJ ultimately determined an RFC that reflected greater restrictions than Dr. Dave's opinion indicated. Tr. 24.

Although Dr. Dave's opinion was less restrictive than the RFC itself, it nevertheless provides substantial evidence in support of the RFC. *See Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (affirming where "the ALJ occasionally deviated from consultative examiners' recommendations to decrease Ramsey's RFC based on other evidence in the record"); *see also Lesanti v. Comm'r of Soc. Sec.*, 436 F.Supp.3d 639, 649 (W.D.N.Y 2020) (citing *Baker v. Berryhill*, No. 1:15-cv-00943-MAT, 2018 WL 1173782, at *4 (W.D.N.Y. Mar. 6, 2018) ("[R]emand is generally not warranted where the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of record.").

The ALJ's determination that Plaintiff's symptoms were not as severe as reported was also supported by many treatment notes. For instance, on November 4, 2019, Plaintiff had an abscess in his buttock, but he denied gastrointestinal symptoms such as abdominal pain, nausea, and vomiting and an examination was largely normal, apart from the abscess. Tr. 495-97. At follow-up appointments for the abscess between November 2019 and February 2020, Plaintiff denied nausea, vomiting or diarrhea, as well as constipation, abdominal distention or discomfort, and physical examinations were unremarkable. Tr. 499-500, 510-13, 515-16, 963-64. At Plaintiff's November 12, 2019 visit, it was noted that his Crohn's disease was "well controlled recently." Tr. 499. Physical examinations were also unremarkable with Plaintiff denying gastrointestinal

symptoms at a visit to Buffalo Pediatric Associates on December 3, 2019, as well as to Dr. Edelstein on December 16, 2019 and February 24, 2020. Tr. 505-06, 561-62, 556-59.

The ALJ also considered that during a telehealth follow-up visit on May 18, 2020, Dr. Edelstein noted that Plaintiff's history of Crohn's disease was primarily colitis with no diarrhea, no abdominal pain, and no blood in his stool. Tr. 23, 922. The ALJ further noted that, although Plaintiff reported a six-month history of discomfort in his knees, possibly with swelling, which was most pronounced when it rained, on examination, he was able to jump up and down, *albeit* with some complaints of stiffness. Tr. 23, 922. Dr. Edelstein assessed arthralgia/arthritis related to Plaintiff's irritable bowel disease and suggested that Plaintiff likely had active disease in his colon based on his knee pain and increased CRP level. Tr. 23, 923. As noted above, Dr. Edelstein ordered several follow-up tests, including an updated colonoscopy, and a rheumatology consultation. Tr. 23, 923.

The ALJ also discussed Plaintiff's rheumatology evaluation with Dr. Aziz on May 21, 2020. Tr. 23, 528-31. Dr. Aziz noted that Plaintiff's irritable bowel syndrome was under "good control," and Plaintiff denied abdominal pain, nausea, vomiting, diarrhea, constipation or blood in his stool. Tr. 23, 528.  Plaintiff had pain with flexion and extension of his left knee with mild swelling but without limitation of range of motion. Tr. 23, 530. In addition to Crohn's disease, Dr. Aziz assessed swelling in the left knee joint, pain in both knees, chronic pain in both ankles, and flat feet. Tr. 530.

The next day Plaintiff slipped getting out of the shower, prompting him to go to the ED with left knee pain. Tr. 23, 804. There was no obvious swelling or deformity in the knee on examination, but he was tender to palpation over the entire knee, and his range of motion was restricted by pain. Tr. 23, 804. X-rays did not show an obvious fracture.  Tr. 23, 804. As the ALJ

observed, Plaintiff's left knee was placed in an immobilizer, and he was advised to follow up for an outpatient orthopedic evaluation. Tr. 23, 804, 807, 973-74.  Despite this intervening incident, during Plaintiff's next follow-up telehealth visit with Dr. Aziz on June 25, 2020, Dr. Aziz noted that Plaintiff's left knee pain had "improved a little" with Celebrex. Tr. 951-52. On examination, Plaintiff had swelling of his left knee and pain with motion; he also had some balance difficulty when walking on heels and tiptoe. Tr. 954. The examination was otherwise normal, and Plaintiff again denied all gastrointestinal symptoms. Tr. 951, 953-54.

As noted above, on July 28, 2020, Dr. Edelstein reported that Plaintiff's colonoscopy, EGD, and biopsies were normal. Tr. 24, 919. Plaintiff said he was not having much abdominal pain and rarely saw flecks of blood in his stool. Tr. 24, 919. The findings on examination were unremarkable, and Dr. Edelstein determined Plaintiff's Crohn's disease was in "deep remission". Tr. 24, 920.  Similarly, at an August 20, 2020 follow-up visit after his December 2019 cyst removal, Plaintiff reported he was doing well and "stooling" one to two times a day. Tr. 948. It was noted that Plaintiff had "good control" of his Crohn's with medication. *Id.*

On September 21, 2020, Dr. Edelstein noted that Plaintiff's recent MRI of the left knee showed a posterior meniscal tear without evidence of arthritis. Tr. 24, 1002, 1014. Dr. Edelstein further noted that Plaintiff continued to be "doing well from a [gastrointestinal] standpoint." Tr. 1014. A physical examination, including examination of his abdomen, was normal, and Plaintiff had a normal gait and station. Tr. 1016.

None of these treatment notes document symptoms or impairments that would preclude the RFC for light work as determined by the ALJ.  Furthermore, the opinions in the record overwhelmingly point to abilities that exceed even those allowed in the RFC.  In addition to the opinion of Dr. Dave discussed above, the ALJ also considered a questionnaire completed by

pediatric care provider Anita Crawley, PNP ("Ms. Crawley"), on June 28, 2019. Tr. 24, 372-73.
Ms. Crawley reported Plaintiff's diagnosis as Crohn's disease, which was asymptomatic on
Remicade infusions. Tr. 24, 372.  She noted that Plaintiff was attending college and playing
football. Tr. 24, 372.  Ms. Crawley opined that Plaintiff had no limitation in his ability to lift, carry,
sit, stand, walk, push, pull or engage in postural activities. Tr. 24-25, 373. The ALJ found Ms.
Crawley's opinion "not persuasive," because it was not supported by the medical record, and it
was inconsistent with other treating source opinion evidence, specifically referring to Dr.
Edelstein's September 23, 2020 opinion. Tr. 24-25, 373; 1006-10.

The ALJ similarly found "unpersuasive" the prior administrative medical findings of state
agency medical consultants Drs. S. Siddiqui and G. Wang, who reviewed the record on August 7,
2019, and September 11, 2019, respectively. Tr. 25, 62, 72. Both doctors opined that Plaintiff's
inflammatory bowel disease was non-severe, but as the ALJ explained, the record supported a
finding that Plaintiff had some significant work-related limitations due to his Crohn's disease and
knee impairment, *albeit* not to the extent that it would preclude the performance of a range of light
work.  Tr. 25. Thus again, the ALJ's consideration of the medical opinion evidence in formulating
Plaintiff's RFC was favorable to Plaintiff.

 Plaintiff does not challenge the ALJ's evaluation of any of these opinions, but rather
focuses his argument on the ALJ's consideration of the "Crohn's & Colitis Residual Functional
Capacity Questionnaire" completed by Dr. Edelstein on September 23, 2020 (Tr. 25, 1006-10).
*See* ECF No. 9-1 at 8-14.  The ALJ observed that Dr. Edelstein reported that Plaintiff's Crohn's
disease was associated with mild abdominal pain and cramping, characterizing Plaintiff's pain as
"very rare" and "not debilitating". Tr. 25, 1006.  Dr. Edelstein also noted that Plaintiff recently
had a pilonidal cyst removed from his back and had a torn meniscus in his left knee. Tr. 25, 1008,

1010.  Dr. Edelstein opined that Plaintiff's pain and other symptoms would seldom be severe enough to interfere with his attention and concentration, and that he could tolerate moderate work stress. Tr. 25, 1007-08.  Dr. Edelstein further opined that Plaintiff was capable of frequently lifting and carrying up to ten pounds, occasionally up to twenty pounds, and rarely up to fifty pounds. Tr. 25, 1009.  He believed Plaintiff could frequently twist and climb stairs and occasionally stoop (bend), crouch, and climb ladders. Tr. 25-26, 1009.  All these limitations are consistent with the RFC.  Tr. 20.

Dr. Edelstein additionally opined that Plaintiff could walk six city blocks without rest; sit for more than two hours at one time; stand for one hour at a time; and sit for a total of about two hours and stand/walk for a total of about two hours during an eight-hour workday. Tr. 25, 1008. The ALJ also acknowledged Dr. Edelstein's opinion that Plaintiff would need ready access to a restroom, and that he might need to take breaks once or twice per shift, for about 15 minutes at a time. Tr. 25, 1009. The ALJ found the opinion only "partially persuasive," explaining that many of the limitations were consistent with the medical record, especially given the fact that Plaintiff's Crohn's was in remission. Tr. 26. However, the ALJ found that other limitations (*e.g.*, sitting and standing for only four combined hours per day), seemed to be related to the temporary impairment from the recent surgery to remove a cyst and to knee pain that was exacerbated by a meniscal tear of the left knee. Tr. 26.  Based on these findings, the ALJ reasonably fashioned an RFC that allowed for a limited range of light work. Tr. 20-26.

Furthermore, the ALJ's evaluation satisfies the ALJ's duty to consider the consistency and supportability of the opinion. The ALJ here clearly indicated that Dr. Edelstein's opinion was consistent in some ways with the medical record and not in others, and evaluated what parts of the opinion were supported by the facts evidenced by the record and which appeared to be relating to

temporary impairments. Tr. 26; 20 C.F.R. § 404.920c(c)(1), (2) (factors of consistency and supportability). Furthermore, even if the ALJ was not as explicit in his consideration of these factors as Plaintiff would like, his reasoning was clear. *See Mongeur*, 722 F.2d at 1040 ("[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.')); *Gladney v. Astrue*, No. 12-cv-6423P, 2014 WL 3557997, *10 (W.D.N.Y. 2014) (even where ALJ could have more fully articulated the basis for his conclusion, any such failure was harmless, where it was "possible to glean the ALJ's rationale" from a review of the entire decision); *see also Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (remand is unnecessary if it would lead to the same conclusion). The ALJ's rationale is clear in this case. and the Court finds no error in the ALJ's consideration of Dr. Edelstein's opinion.

With respect to Plaintiff's contention that the ALJ did not reconcile the RFC with Dr. Edelstein's opinion because it did not contain a specific allowance for bathroom breaks (*see* ECF No. 9-1 at 8-14), the Court finds that such a limitation in the RFC was not necessary, given that Dr. Edelstein opined that Plaintiff would need one to two fifteen-minute bathroom breaks per eight-hour workday shift, which falls within the definition of normal breaks for most jobs. Tr. 1009. *See* POMS DI 25020.010B(2)(a) (describing a normal job as having two breaks in addition to lunch); *see also* Tr. 56 (vocational expert testimony that the "generally accepted rate of time off-task is up to 10 percent of the workday in addition[] to normal breaks . . ."). Thus, even if Plaintiff's bathroom needs might not conform to traditional times for breaks, the general allowance for an additional 10 percent off-task time in addition to two breaks and lunch is more than enough to account for a total of 15 to 30 minutes of bathroom breaks over an eight-hour day.

Moreover, Plaintiff's suggestion of hypothetical additional flare-ups (*see* ECF No. 9-1 at 12) that potentially *could* require more bathroom breaks is insufficient to overcome the ALJ's

thorough review of the evidence, which makes it clear that Plaintiff's Crohn's disease was well controlled. Tr. 23-24; *see* Tr. 920 (Crohn's disease was in "deep remission" on July 28, 2020); Tr. 948 (Plaintiff had "good control" of his Crohn's with medication on August 20, 2020); Tr. 1014 (Plaintiff continued to be "doing well from a [gastrointestinal] standpoint" on September 21, 2020). Thus, the ALJ properly reconciled the evidence of record, and considering Plaintiff's potential fluctuations of symptoms, the ALJ reasonably determined a more restrictive RFC than suggested by the majority of the opinions in the record, as well as an RFC that was generally in line with Dr. Edelstein's statements. *See Veino*, 312 F.3d at 588 ("conflicts in the medical evidence are for the Commissioner to resolve").

Moreover. as previously noted, Plaintiff bears the ultimate burden of proving that he was more limited than the ALJ found. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC and failed to do so."); *Poupore*, 566 F.3d at 306 (it remains at all times the claimant's burden to demonstrate functional limitations, and never the ALJ's burden to disprove them). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which he has failed to do.

Based on the foregoing, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original). As the Supreme Court

explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (internal citations omitted).

## <u>CONCLUSION</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE